# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN GADDIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-01262-TWP-MJD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, John Gaddis ("Mr. Gaddis"), requests judicial review of the final decision of the Commissioner of the Social Security Administrator ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

**A. Procedural History**

In a determination dated August 15, 1996, Mr. Gaddis was found disabled as of February 13, 1995, under Title II of the Act. Subsequently, it was determined that his disability continued in a determination dated March 21, 2001. On July 1, 2010, it was determined that Mr. Gaddis was no longer disabled as of July 14, 2010. On January 14, 2011, this determination was upheld on reconsideration. Thereafter, Mr. Gaddis filed a request for a hearing, which was held on April 23, 2012, before Administrative Law Judge Monica La Polt ("the ALJ"). On May 11, 2012, the ALJ denied Mr. Gaddis' claim. Mr. Gaddis filed a Request for Review, which was denied on July 18, 2013, making the ALJ's opinion stand as the Commissioner's final decision. On December 1,

2013, Mr. Gaddis filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c).

**B.     Factual and Medical Background**

At the time of the ALJ's decision, Mr. Gaddis was 47 years old and the highest level of education he completed was the twelfth grade.  He lives at home with his wife, his 25 year old daughter, and two minor grandchildren.  He had three dogs and he used to breed small animals and at one time had fifty to sixty gerbils, thirty guinea pigs, and one hundred cockatiels.  Mr. Gaddis stated to the ALJ that he sold a few of these animals; however, he gave most of them away.  He did not engage in substantial gainful activity throughout his disability term.  When he had the animals, Mr. Gaddis stated he spent 30 to 45 minutes a day feeding and giving them water and his grandchildren would also feed and help him take care of the animals.

Mr. Gaddis was found disabled in a determination dated August 15, 1996, due to various impairments including back pain, affective disorder, and carpal tunnel syndrome.  The most recent favorable disability determination, the comparison point decision, was March 21, 2001.  The ALJ determined that a medical improvement had occurred as of July 1, 2010, since the time of the comparison decision point.

Mr. Gaddis testified that he takes medication for blood pressure, cholesterol, and back pain, as well as Prozac and Abilify.  He also uses Advair every morning and a Ventolin inhaler as needed.  He testified he is unable to work because he has problems leaving the house, dealing with people, and carpal tunnel syndrome in both arms.  He stated he also suffers from depression with suicidal thoughts, which worsened over the past couple of years.  He testified that he has lower back pain and can only sit for one hour at a time and stand for fifteen to twenty minutes at a time.

In October 2009, Mr. Gaddis reported to his treating physician at the Wagner Medical Center that he was doing much better ([Filing No. 14-7, at ECF p. 20](Filing No. 14-7, at ECF p. 20)). In April 2010, Paul Roberts, Ph.D. ("Dr. Roberts"), saw Mr. Gaddis for a consultative psychiatric examination. Mr. Gaddis did not report any pain complaints, exhibit any pain related behaviors, or appear to be in any acute distress. However, Mr. Gaddis did report that his carpal and radial surgeries did not bring relief. Dr. Roberts noted that Mr. Gaddis was intact neurocognitively and had no significant psychopathology that would prevent him from securing gainful employment.

In May 2010, state agency reviewing medical expert Joelle Larsen, Ph.D., completed a psychiatric review and opined that Mr. Gaddis had no restrictions of activities of daily living. She also stated he had only mild difficulties with social functioning and maintaining concentration, persistence, or pace, and that his psychological difficulties were not significantly limiting.

In June 2010, Mr. Gaddis underwent a consultative examination with Duan Pierce, M.D. ("Dr. Pierce"), in June 2010. In this consultation, Mr. Gaddis complained of pain from his elbow down to his fingers and in his back and knees. Dr. Pierce noted that Mr. Gaddis had non-pitting pretibial edema in his bilateral extremities with no signs cyanosis, clubbing, venous stasis, arterial insufficiency, or ulceration. Dr. Pierce diagnosed Mr. Gaddis with osteoarthritis of his back and knees, sleep apnea, hypertension, cardiomegaly, asthma, and depression. Dr. Pierce also opined that Mr. Gaddis could work at the time, but would benefit from not doing any type of repetitive motions with his hands.

In July 2010, state agency reviewing medical expert J. Sands, M.D. ("Dr. Sands"), completed a physical review and capacity assessment. Dr. Sands diagnosed Mr. Gaddis with bilateral and radial tunnel and osteoarthritis of his back and knees. Dr. Sands also opined that Mr.

Gaddis could perform light exertion work and could sit or stand for about six hours in an eight hour work-day.

Mr. Gaddis' disability benefits were discontinued in July 2010. In August 2010, Mr. Gaddis went to his treating physician's clinic, the Wagoner Medical Center, and expressed depression and anxiety regarding losing his social security benefits to a social worker. During this time, he also visited Family Psychiatric Center, LLC, for the depression as well. He was diagnosed with depressive disorder and assigned a current global assessment of functioning ("GAF") score of 50 and a score of 55 within the past year. On August 22, 2011, Mr. Gaddis underwent a radical left nephrectomy to remove a renal cell carcinoma on his left kidney.

Mr. Gaddis was seen at the Wagoner Medical Center between February 2011 and March 2012. In April 2012, Dr. Don Wagoner ("Dr. Wagoner"), his treating physician, completed physical and mental capacity assessments. Dr. Wagoner opined that Mr. Gaddis could only occasionally lift or carry up to a maximum of ten pounds; sit for five of eight hours and thirty minutes at a time; stand for one of eight hours and fifteen minutes at a time; and walk for one of eight hours and for only two blocks at a time. He also noted that Mr. Gaddis could only occasionally reach, push, or pull; never tolerate exposure to most environmental elements; occasionally tolerate exposure to moving parts; and never climb stairs, ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. Dr. Wagoner opined that Mr. Gaddis had marked limitations interacting appropriately with others and in his ability to respond appropriately to usual work situations and to changes in a routine work setting.

**C.    The ALJ's Decision**

The ALJ made the following findings as part of his decision. Mr. Gaddis last met the insured status requirements of the Social Security Act on July 1, 2010. The last favorable disability

4

determination was made on March 21, 2001. The ALJ followed an eight-step evaluation under Section 223 (f) of the Act to determine if Mr. Gaddis had a continuing disability.

At step one, the ALJ acknowledged that Mr. Gaddis did not engage in substantial gainful activity from 1995 through July 1, 2010. At step two, the ALJ determined Mr. Gaddis had the following severe impairments: depression, anxiety, mild carpal tunnel syndrome, and obesity and chronic back pain in combination 1. She found that these limited his ability to perform basic work activities and caused more than minimal functional limitations. The ALJ determined that Mr. Gaddis had non-severe physical impairments of asthma and sleep apnea and that these impairments would have no more than a minimal effect on his ability to work. The ALJ found that Mr. Gaddis' osteoarthritis is a non-medically determinable impairment because impairments may not be found to exist on the basis of symptoms alone.

The ALJ then determined that Mr. Gaddis does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. §§ 404.1525 and 404.1526. The ALJ considered degenerative disc disease under listing section 1.04, *Disorders of the Spine*, but held that the medical evidence did not support the listing. The ALJ found that there was no listing for carpal tunnel syndrome and that there is no medical evidence that establishes an impairment that medically equals a listing in section 11.00, *Neurological*. Although there is no specific listing for obesity, the ALJ considered Mr. Gaddis' obesity under Listings for *Musculoskeletal, respiratory and cardiovascular impairments* (Listings 1.00Q, 3.00I, and 4.00F, respectively) in finding that the obesity alone or in combination with any other impairment failed to medically equal the criteria of any listed impairment. The ALJ also considered Mr. Gaddis' mental impairments under listing 12.04, *Major depressive disorder*, or 12.06, *Anxiety related disorder* in determining that the impairments do not meet or medically equal

the criteria of listings because they do not restrict Mr. Gaddis' daily living. The ALJ acknowledged that Mr. Gaddis has moderate difficulties in social functioning and has no difficulties with regard to concentration, persistence, pace, or episodes of decompensation due to his mental impairments.

At step three, the ALJ found that medical improvement occurred as of July 1, 2010, because there had been a decrease in medical severity of the impairments present at the time of the comparison decision point on March 21, 2001. 20 C.F.R. § 404.1594(b)(1). Mr. Gaddis' GAF increased from 39 at the time of the comparison decision point to 60. She also found that Mr. Gaddis' mental impairments substantially improved since the comparison decision point. The ALJ also noted that Mr. Gaddis' treating physicians did not prescribe any medications or recommend any treatment for his carpal tunnel syndrome as of July 1, 2010.

At step four, the ALJ found that the medical improvements were related to Mr. Gaddis' ability to work because his impairments no longer met or medically equaled the same listing that was equaled at the time of the comparison decision point. 20 C.F.R. § 404.1594(c)(3) (i)). There were no exceptions to medical improvement under step five. As stated above, the ALJ did not find severe impairments under step six. At step seven, the ALJ determined that Mr. Gaddis has the residual capacity to perform light work under 20 C.F.R. § 404.1567(b). Although the ALJ found that Mr. Gaddis had limitations that would affect the type of work he could do, she concluded at step eight that he was capable of making a successful adjustment to available light work that existed in the national economy that he could perform.

## II.  DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or supplemental security income if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  The Social Security Administration ("SSA") has implemented the statutory standards to determine if a claimant declared disabled continues to be disabled in part by prescribing an "eight-step sequential evaluation process."  20 C.F.R. § 404.1594.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  20 C.F.R. §§ 404.1520, 416.924.

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.  20 C.F.R. § 404.1594(f)(1).  At the second step, it must be determined whether the claimant has impairments, either singly or in combination, that meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404 Subpart P, Appendix 1 (the "Listing of Impairments").  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the claimant does, his disability continues.  20 C.F.R. § 404.1594(f)(2).  At step three, it must be determined if medical improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1).  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.

After finding that medical improvement has occurred, it must be determined if the medical improvement is related to the ability to work at step four.  20 C.F.R. § 404.1594(f)(4).  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  20 C.F.R. § 404.1594(b)(3).  If it does, the analysis proceeds to the sixth step.  At step five, it must be determined if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5).  There are two groups of exceptions.  20 C.F.R. §§ 404.1594(d) and

7

(e). An exception found in the first group continues the analysis to the sixth step, while an exception found in the second group ends the claimant's disability. 20 C.F.R. § 404.1594(f)(5).

At step six, it must be determined if the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.92 (c). If the claimant's impairments do not satisfy a Listing of Impairment, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. At the seventh step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. 20 C.F.R. § 404.1594(f)(7). At the last step, it must be determined if the claimant can perform work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8).

A person will be determined to be disabled only if his impairments "are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The combined effect of all of the claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B), 1382a(a)(3)(G). The burden of proof is on the claimant for the first six steps; it then shifts to the Commissioner at the seventh step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act grants the court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's task is limited in determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The Commissioner's decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In evaluating the decision, the court's "role is extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). To determine whether substantial evidence exists, the court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. If the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

### III. DISCUSSION

Mr. Gaddis makes one argument on appeal: that the ALJ did not properly consider the opinion of his treating physician, Dr. Wagoner. Opinions of a treating physician are generally entitled controlling weight. 20 C.F.R. § 404.1527; *Clifford*, 227 F.3d at 870. However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001).

Mr. Gaddis argues that the ALJ did not properly consider the opinion of Dr. Wagoner because she assigned Dr. Wagoner's opinion "little weight" and ignored substantial evidence. Mr. Gaddis argues that because the ALJ never mentioned the length of treatment between Mr. Gaddis and Dr. Wagoner that this fact was not given proper consideration as required by 20 C.F.R. § 404.1527(c). While section 404.1527 proscribes that the ALJ shall consider the length and

9

frequency of treatment and the nature of the treatment relationship, there are several other factors mentioned within this section that the ALJ shall also consider in deciding the weight given to a treating physician's opinions. 20 C.F.R. § 404.1527(c). These factors should be evaluated when the treating physician's opinion is not given controlling weight. *Id.* The other factors include the nature of the treatment relationship, the degree to which the opinion is supported by medical evidence, the opinion's consistency with the record as a whole, the specialization of the physician, and any other factors presented to the ALJ by the complainant. *Id.* A treating physician's opinion shall be given controlling weight if it is well supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).

Mr. Gaddis' argument that the ALJ did not consider the length of treatment fails for several reasons. To begin, the ALJ noted that Mr. Gaddis stated that he has been treated by Dr. Wagoner for the past fifteen years for his depression. ([Filing No. 14-2, at ECF p. 28.](#)) The ALJ also noted that Mr. Gaddis reported to Dr. Wagoner in October 2009 and April 2010 that he was doing well, but in July 2010, following cessation of his disability benefits, went back to Dr. Wagoner's clinic at which time he was diagnosed with depression.

Next, Mr. Gaddis argues that Dr. Wagoner's opinion should be given controlling weight because it is not inconsistent with other substantial evidence in the record. Mr. Gaddis interprets this standard to mean that the ALJ must find inconsistent evidence in the record as a condition before giving a treating source's opinion less than controlling weight, as opposed to a requirement that the opinion be consistent with the record. Because the ALJ assigned little weight to Dr. Wagoner's opinion on the basis that his opinion was out of proportion to his treating records, Mr. Gaddis argues that the ALJ used the wrong legal standard.

The Seventh Circuit has held that the correct legal standard to be applied is whether the treating source's opinion is "not inconsistent" with other substantial evidence, meaning contradicted by evidence in the record. *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). The treating physician's opinion may also be discounted when it is internally inconsistent. *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004) (citation omitted). However, an ALJ's decision will stand so long as she "minimally articulate[d]" her reasons for consideration of medical evidence. *Elder v. Astrue*, 539, 545 (7th Cir. 2008) (citation omitted).

The ALJ assigned little weight to Dr. Wagoner's opinion because it was out of proportion to his treatment records, clinical findings, and diagnostic studies; i.e. Dr. Wagoner's opinion on Mr. Gaddis' disability was inconsistent with other record evidence or internally inconsistent. Mr. Gaddis reported to Dr. Wagoner that he was doing much better on October 15, 2009, and doing well on April 20, 2010. ([Filing No. 14-7, at ECF p. 10](), 20.) Mr. Gaddis was also not on any prescription medication until he was faced with the possibility of losing his disability benefits. ([Filing No. 14-4, at ECF p.12.]()) The ALJ's determination as to why she assigned little weight to Dr. Wagoner's opinion supports the position that she found his opinion to be internally inconsistent with his treatment records and inconsistent with the record as a whole.

The "not inconsistent" is one of the factors to be considered from several factors in determining the weight to be given to a treating physician. 20 C.F.R. § 404.1527 (c)(2). In *Skarbek*, the Seventh Circuit upheld an ALJ's finding that a treating physician's determination that the plaintiff had limited range of motion in his knees was not supported by the treating physician's progress notes or x-rays. *Skarbek*, 390 F.3d at 504. In addition to supporting the determination that there were internal inconsistencies, the same evidence formed a basis for the reason that the ALJ decided that Dr. Wagoner's opinion was not supported by medical evidence. The ALJ also

11

noted that Dr. Wagoner's treatment notes on Mr. Gaddis' life stressors that caused his stress, anxiety, and nervousness do not warrant severe mental functional limitations.

The ALJ further determined that Mr. Gaddis' activities of daily living do not support Dr. Wagoner's opinions. The Seventh Circuit upheld an ALJ's decision that a claimant's ability to perform his home exercise and traction program, grocery shopping, doing laundry, driving a car, and walking one mile daily supported the ALJ's finding that the claimant's allegation that he could not perform light work was inconsistent with the record as a whole. *Johansen,* 314 F.3d at 288. Mr. Gaddis reported that he watches his grandchildren, feeds, waters, and cleans his pets, prepares meals on a daily basis, does the laundry, washes the dishes, does simple repairs, and grocery shopping.

The record shows that both Dr. Roberts and Dr. Pierce opined that Mr. Gaddis would be able to work and the ALJ found these opinions to be supported by medically acceptable findings and diagnostic techniques consistent with the record. Dr. Roberts performed a psychological consultative examination and Dr. Pierce performed a physical consultative examination. The ALJ noted that Dr. Pierce reported that Mr. Gaddis was able to get on and off the examination table without difficulty and without using an assistive device for ambulation. ([Filing No. 14-2, at ECF p. 31.](#)) Further, a neurological examination revealed 5/5 strength in all muscle groups, no sensory abnormality, and symmetrical reflexes. The ALJ assigned great weight to Dr. Roberts' opinion and some weight to Dr. Pierce's opinion that Mr. Gaddis would benefit from not doing any type of repetitive motions with his hands because there was no laboratory diagnostic techniques to support this limitation. The ALJ noted that Dr. Sands opined that Mr. Gaddis could perform light exertion work but could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; balance,

12

stoop, kneel, crouch, or crawl. J.V. Corcoran, M.D., a state agency physician, also opined April 16, 2012 that the claimant could perform work at light exertion but noted no postural limitations.

Based on the inconsistent medical evidence presented by Dr. Wagoner and the ALJ's determination that evidence in the record did not support a finding of severe mental functional limitation, the Court finds the ALJ ruled properly in not granting controlling weight to Dr. Wagoner's opinion.

### IV.  CONCLUSION

For the foregoing reasons discussed above, the Court **AFFIRMS** the Commissioner's decision discontinuing benefits. Mr. Gaddis' appeal is **DENIED**.

SO ORDERED.

Date: 9/29/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

13